LINDA LEALI, P.A.
Frank L. Eaton
2525 Ponce de Leon Blvd. Suite 300
Coral Gables, Florida 33134
Telephone: (305) 341-0671
Facsimile:  (786) 294-6671
Email: featon@lealilaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | |
| ADAM S. OLSEN, ) | Case No. 07-00400-ELG |
| ) | Chapter 7 |
| Discharged Debtor. ) | |
| _____) | |

**DISCHARGED DEBTOR'S MOTION FOR AN ORDER DIRECTING THE REMOVAL OF THE MEMORANDUM DECISION AND ORDER STRIKING MOTION TO ENFORCE DISCHARGE INJUNCTION AND SEEK ORDER OF CONTEMPT [ECF. NO. 30] FROM GOVINFO.GOV**

Adam S. Olsen ("Mr. Olsen"), the discharged Debtor in the above-captioned chapter 7 case (the "Chapter 7 Case"), files this motion (the "Motion") for an order directing the removal of this Court's Memorandum Decision and Order Striking Motion to Enforce Discharge Injunction and Seek Order of Contempt [ECF. No. 30] (the "Order") from govinfo.gov, and in support hereof represents as follows:

INTRODUCTION

1.By this Motion, Mr. Olsen seeks entry of an order directing the removal of the Order (entered over 14 years after his chapter 7 discharge) from the govinfo.gov, a website maintained by the U.S. Government Printing Office (the "GPO"). Mr. Olsen commenced a chapter 7 case in July 2007 and granted a discharge and "fresh start" in November 2007. Since his

discharge, Mr. Olsen has rehabilitated his credit rating and built a thriving business as a prominent Washington, D.C. lobbyist.

2.	Notwithstanding Mr. Olsen's fresh start, the Order is easily found in a routine search on Google or other search engines and has generated numerous inquiries whether Mr. Olsen is currently a chapter 7 debtor (which he is not), which have negatively impacted Mr. Olsen and his business.  However, the Order itself limited service to "Recipients of e-notification of orders," which were Mr. Olsen's former counsel, his former chapter 7 trustee, one discharged creditor, and the two parties who were targets of the contempt motion for violation of Mr. Olsen's discharge, as discussed below.  The Order was also marked "Not for publication in West's Bankruptcy Reporter."  Notwithstanding the limited service of the Order, it migrated to the govinfo.gov.  By publishing the Order on govinfo.gov, its availability went from a handful of interested parties to the "World Wide Web," which by some reports has in excess of 4 billion users.  This level of publication of the Order and its negative impact of Mr. Olsen's reputation could not have been foreseen by Judge Teel when he entered the Order, which was written ultimately to protect Mr. Olsen's fresh start.

3.	The Order was issued on June 5, 2020 in connection with a contempt motion filed by his former bankruptcy counsel, Cohen Baldinger & Greenfeld, against a creditor/lawyer for violation of Mr. Olsen's discharge injunction, which occurred in 2018.  The only reason that the Order was issued is because of (i) the flagrant violation of his discharge order by a former creditor who filed a collection action and obtained a state court judgment against Mr. Olsen in 2018 and (ii) procedural defects in Mr. Olsen's contempt motion.[1]

---

[1] The basis for striking the Contempt Motion included failure to provide requisite notice and failure to conform to the Local Rules governing contempt motions. As a result, the Court directed Mr. Olsen to file a renewed contempt motion consistent with the Local Rules.

2

4.     While titled a Memorandum Decision and Order, the Order is procedural in nature relating to a 2020 contempt motion for a violation of Mr. Olsen's discharge order, and not the type or magnitude of a substantive decision that should have migrated to govinfo.gov for publication on the internet.  Apparently, the Order was elevated in importance because "Memorandum Decision" was inserted in the title.  Had those two words – "Memorandum Decision" been omitted, presumably the Order would not be found on govinfo.gov.[2]

5.     The 2020 publication of the Order and the resulting queries has tainted and detrimentally impacted Mr. Olsen's fresh start granted without objection in his 2007 chapter 7 case.  Like other run of the mill administrative orders, this Order should have remained a routine docket entry available through PACER or the Clerk of the Court's own database, and one not one easily accessible via Google or other search engines.

6.     As discussed below, the publishing of the Order on govinfo.gov can easily be found on a Google search using the search terms "Adam Olsen" and appears on the first page in the top four results.  Attached hereto as Exhibit A is copy of a screenshot taken by Mr. Olsen of the search query "adam olsen washington dc" that shows the link to the Order in second place, right after the

---

[2] The undersigned conducted an unscientific analysis of decisions of this Court that can be found on govinfo.gov, which also parallel the decisions available on the Clerk's U.S. Bankruptcy Court Opinions [https://ecf.dcb.uscourts.gov/cgi-bin/Opinions.pl].

It appears that if the decision includes the words "Memorandum Decision,"  it automatically gets migrated to govinfo.gov.  In reviewing many of the decisions entered by Judge Teel in 2020 available on govinfo.gov [https://www.govinfo.gov/app/collection/uscourts/bankruptcy/dcb/2020/%7B%22pageSize%22%3A%22100%22%2C%22offset%22%3A%220%22%7D] , most, if not all, are substantive decisions that often include relevant case law. For example, on April 28, 2020, Judge Teel entered an 81-page Memorandum Decision and Order Denying Trustee's Motion to Alter or Amend Judgment in the *In re NETtel Corporation* case [Chapter 7 Case No. 01-01771 – Dkt. No. 1340], which resolved a substantive chapter 7 distributions issue in reliance on relevant case law.  On June 11, 2020, Judge Teel entered a 7-page Memorandum and Order Disapproving the Trustee's Proposal to Collect a 5% Commission with Respect to the Disbursement of the Estates' Surplus Funds to Three Nonprofit Entities [Chapter 7 Case No. 19-00026 – Dkt. No. 90], which again resolved a substantive issue denying a chapter 7 trustee's commission. Regardless of the length of the Memorandum Decisions issued by Judge Teel, most involved a substantive and often disputed issue of law, which is not the case with the Order, since the Order focused on the procedural defects of the Contempt Motion.

link to Mr. Olsen's company – Sconset Strategies. LLC.  In this day and age, it is typical for any prospective client to Google the name of the party they wish to hire.  To a reader not familiar with the docket entries, the search result could be interpreted to mean that Mr. Olsen is currently a chapter 7 debtor, as of June 5, 2020, rather than a debtor benefitting from the order discharging his case entered November 6, 2007, which as noted occurred over 14 years ago.

7.     As a consequence, clients of Mr. Olsen have queried whether he is currently in bankruptcy, which of course he is not.  While Mr. Olsen has been able to respond to these inquiries – with some discomfort, the existence of the Order has been detrimental to his fresh start granted in 2007.  Distilled to its legal essence, this case is about preserving Mr. Olsen's fresh start that has been disrupted and diminished by the availability of the Order on Google and other search engines.

8.     But for the flagrant violation of the discharge order and the detrimental impact on Mr. Olsen's fresh start, Mr. Olsen would not be seeking the removal of the Order from govinfo.gov.  Notably, while the existence of Mr. Olsen's Chapter 7 Case has been removed from any credit searches, it remains available to billions on internet users through govinfo.gov.  To be clear, Mr. Olsen is **not** requesting that the Order be removed from the Court's docket or the Clerk Office's website.[3]   Rather, Mr. Olsen is seeking the limited relief of an order from this Court directing the Administrative Office of the United States Courts ("AOUSC") to, in turn direct, the GPO to remove the Order from govinfo.gov.  As discussed below, the Court has this authority.

## JURISDICTION

9.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C §§ 157 and 1334.  The matter is a core proceeding under 28 U.S.C § 157(b)(2)(A).

---

[3] The Order can be found with some diligence at https://ecf.dcb.uscourts.gov/cgi-bin/Opinions.pl.  However, to retrieve the Order, the Google search must also include the chapter 7 case number or the word "bankruptcy."

4

10. Venue is proper under 28 U.S.C §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

11. Mr. Olsen commenced his Chapter 7 Case on July 31, 2007. The Chapter 7 Case proceeded smoothly and Mr. Olsen received his discharge on November 6, 2007 [*See* Discharging Debtor Order – Dkt. No. 21]. The Chapter 7 Case was closed on November 20, 2007. After receiving his discharge, Mr. Olsen used the fresh start provided to debtors to rebuild his credit and start a successful business as a lobbyist in the District of Columbia. He is widely respected and, as a consequence, his services are in demand.

12. In 2018, a creditor (also an attorney) who had been properly served notice of the Chapter 7 Case sued Mr. Olsen on discharged debt in New Jersey state court. Mr. Olsen represented himself *pro se* and advised the state court of his discharge. Notwithstanding the discharge injunction, the creditor, through his lawyer, was successful in obtaining a judgment in the amount of $50,000. After entry of the state court judgment, Mr. Olsen hired his former bankruptcy counsel to reopen the Chapter 7 Case. His chapter 7 counsel then filed a Motion to Enforce Discharge Injunction and Seek Order of Contempt [ECF No. 29] (the "Contempt Motion"). Upon review of the Contempt Motion, Judge Teel entered the Order striking the Contempt Motion as procedurally defective and suggested corrections to the filing of a renewed Contempt Motion. Notably, Judge Teel telegraphed the creditor that he was going to lose, and urged the parties to settle, which they did in favor of Mr. Olsen. The Order concluded that if the Contempt Motion was not corrected by September 30, 2020, the Clerk was directed to close the Chapter 7 Case once again, which occurred on August 21, 2020. On a purely technical issue, the

---

[4] The facts of the Chapter 7 Case are set forth in the Motion to Reopen Case and the Motion to Enforce Discharge Injunction and Seek Order of Contempt [ECF No. 29].

5

Order misspells Mr. Olsen's last name as "Olson" in the case caption. As noted, the Order stated "Not for publication in West's Bankruptcy Reporter."

13. Mr. Olsen was clearly elated by the result. However, such elation has since evaporated since the Order migrated to govinfo.gov, thus becoming widely available on Google. Mr. Olsen is now getting inquiries about a chapter 7 case what was initially closed almost 14 years ago and re-opened at no fault of Mr. Olsen to rightfully enforce his discharge injunction and maintain the integrity of his fresh start. The unintended consequence of the Order, which protected Mr. Olsen's fresh start in the short term, is that ironically an impairment of his fresh start in the long term. Indeed, but for the transgression by the New Jersey creditor and the procedural defect of the Contempt Motion, Mr. Olsen would not be in the position of seeking to remove the Order from the public database of the GPO.

14. In order to address this issue before the Court, Mr. Olsen filed a motion to reopen the Chapter 7 Case [Dkt. No. 38]. On November 3, 2021, the Court entered the Order Granting Discharged Debtor's Motion (A) Reopening Case to File a Motion to Remove Memorandum Decision from Govinfo.gov and (B) Limiting Notice of Proceedings [Dkt. No. 39] (the "Reopening Order"). Notably, the Reopening Order provides that further notice of these proceedings be limited to the Office of the United States Trustee and any party registered to receive notice via ECF.

15. Attached hereto as Exhibit B is the Declaration of Adam S. Olsen in support of the Motion.

**ARGUMENT**

16. In conducting research and diligence on how to remove the Order from govinfo.gov and the GPO databases in general, the undersigned found a document prepared by the GPO entitled "Privacy – Securing and Protecting Your Information." *See* https://www.gpo.gov/privacy. While

the document focuses on traditional "Personal Identifiable Information," it also states that parties can request that a court document be withdrawn on the grounds that "the originating agency, in this case the court that issued the opinion, determines it is necessary to withdraw the publication from public access." The document further states that "[o]nly the [AOUSC] can direct the GPO to remove any information from the USCOURT collection." Upon further investigation, the undersigned was advised that the Court can direct the AOUSC to cause the removal of the Order, which is consistent with the GPO document discussed above. Accordingly, this Court has the power to direct withdrawal of the Order "from public access" if it determines withdrawal is "necessary."[5] In this case, withdrawal is necessary to prevent further damage of Mr. Olsen's fresh start.

17. Ultimately, the Order is the Court's order and the Court can dictate how far it wants its order to be disseminated, in the interest of equity. Court's routinely note that an order is "Not for Publication" or in the case of the Order, "Not for publication in West's Bankruptcy Reporter." In this case, the Order is available to the public through all the usual public portals – PACER and the Clerk's Office, which is more than sufficient in the interest of transparency and due process for the court system, but as discussed fully below, the Order should not be massively available via goveinfo.gov given the administrative nature of the Order and the negative impact on Mr. Olsen.

18. A fundamental policy goal of the federal bankruptcy laws enacted by Congress is to give debtors a financial "fresh start" from burdensome debts. The United States Supreme Court made this point about the purpose of the bankruptcy laws in a 1934 decision: "[I]t gives to the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort,

---

[5] Through a third-party communication with the AOUSC, Mr. Olsen was advised that the AOUSC will not remove a properly posted order without a court order. Given the necessity of obtaining certain relief from this Court, Mr. Olsen has not made a demand on the AOUSC.

7

unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). This goal is accomplished through the bankruptcy discharge, which releases debtors from personal liability from specific debts and prohibits creditors from ever taking any action against the debtor to collect those debts.

19. The key phrase used by the Supreme Court is "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." In the case of Mr. Olsen, his "fresh start" was first disrupted by the New Jersey creditor when that creditor violated the discharge order. While Mr. Olsen has no issue with the existence of the Order on the Court's docket or the website of the Clerk's Office, the migration of the Order to the wide public arena of govinfo.gov has impacted Mr. Olsen's fresh start since his "new opportunity in life and a clear field for future effort" has been clouded and diminished each time his name is Googled, through no fault of his own. Mr. Olsen's expectation of a lasting fresh start and clean slate has been substantially impaired in derogation of the intent of Congress to provide such relief for debtors, again at no fault of his.

20. The relief requested in the Motion is appropriate for several reasons. First, at its core, the Court is a court of equity. Section 105(a) of the Bankruptcy Code provides that

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). While the phrase "fresh start" is not found in the Bankruptcy Code, its meaning is wrapped in case law and legislative history into the definition of discharge as such term is used in section 727 of the Bankruptcy Code and Mr. Olsen's Discharge of Debtor Order. While Mr. Olsen received his "fresh start," the issuance of the Order has diminished the viability of the

8

protections of his Discharge of Debtor Order, as discussed in the Olsen Declaration. Under section 105(a) of the Bankruptcy Code, the Court has the equitable power to issue an order to carry out the provisions of the Bankruptcy Code and, in this case, entering an order directing the AOUSC to direct the GOP to remove the Order from govinfo.gov. Equity is in favor of Mr. Olsen based upon the facts of this case. Removal of the Order would (i) substantially diminish the possibility that the Order could be used to undercut Mr. Olsen's fresh start and (ii) provide assurance that the Chapter 7 Case which was first closed in 2007 will not be raised by third parties, including Mr. Olsen's current and future clients.

21. Second, Mr. Olsen is not seeking to have the Order placed under seal on the docket. Indeed, in the event the Order is removed from govinfo.gov, any party will be able to continue to find the Order through the Clerk's Office or PACER. However, traditional search engines like Google typically do not have access to PACER since it is a pay service.

22. Third, the Order is not a typical decision found on govinfo.gov. The majority of decisions found on that database tend to be substantive in nature. The Order, which struck the Contempt Motion, is a mere four pages of judicial instruction and guidance for refiling, and is marked "Not for publication in West's Bankruptcy Reporter." There is nothing particularly substantive in the Order other than a message for the parties to settle and not adjudicate an obviously egregious violation of Mr. Olsen's discharge order. The message was delivered and the parties settled in favor of Mr. Olsen. However, but for the procedural errors of the Contempt Motion, the Order would not have been entered.

23. Fourth, Mr. Olsen is suffering the reputational consequence of the Order posted on govinfo.gov stemming from the violation of his discharge order by a former creditor who was on notice of the discharge. The entire purpose of a discharge is to provide a debtor with a "fresh

9

start," which in this case came in November 2007. Most importantly, there is a presumption of privacy for Mr. Olsen 14 years after his discharge. As noted, he has rebuilt his credit and created a successful business that is in danger of being harmed by continued public access to the Order. But for the violation of the discharge injunction and the procedural defect of the Contempt Motion, Mr. Olsen would not be in the predicament of seeking the removal of the Order from the GPO databases.

24. Lastly, Mr. Olsen has exhausted is non-judicial remedies. Mr. Olsen sought to remedy this matter by hiring Guaranteed Removals, a company which specializes in content removal. The company was unable to remove the Order. In addition, Mr. Olsen contacted Reputation Defender who advised him that they might be able to push the govinfo.gov listing down a few entries on search results but would be unable to have the content removed. The quoted cost of such service was $7,500.00.

25. Based upon the impairment of Mr. Olsen's fresh start and the Court's equitable power to enter an order directing the AOUSC to direct the GOP to remove the Order from govinfo.gov as soon as reasonably practicable, for all the reasons stated herein, Mr. Olsen respectfully requests that the Court grant the Motion.

26. Upon entry of an order adjudicating the Motion, Mr. Olsen also requests that such order provide for the closing of the Chapter 7 Case, which would avoid the need to file another motion with the Court. In addition, Mr. Olsen requests that notice of any such order be limited to the Office to the United States Trustee, any party entitled to receive ECF notice, the AOUSC and the GOP but with a direction that such order not be published on govinfo.gov. Publication of such order on govinfo.gov would further exasperate and compound the problem that Mr. Olsen is addressing in this Motion regarding the publication of the Order on that website.

NOTICE

27.	Notice of the Motion is being (a) electronically served upon all parties in interest participating in the CM/ECF system in this case; and (b) served via U.S. Postal Service – First Class Mail to: Administrative Office of the United States Courts, Attn: General Counsel's Office (and *via* email at: Court_Opinions@ao.uscourts.gov);[6] and U.S. Government Printing Office.

WHEREFORE, the Debtor respectfully requests that the Court (a) grant the Motion; (b) enter the Order attached hereto as Exhibit C, which would limit notice to the Office of the United States Trustee, any party entitled to receive ECF notice, the AOUSC and the GPO; and (c) grant Mr. Olsen such other and further relief as the Court may deem proper.

Dated: November 8, 2021

>	LINDA LEALI, P.A.
>	2525 Ponce de Leon Blvd. Suite 300
>	Coral Gables, Florida 33134
>	Telephone: (305) 341-0671
>
>	By:   /s/ Frank L. Eaton
>	         FRANK L. EATON
>	         Attorney for Adam S. Olsen
>	         Admitted Pro Hac Vice
>	         featon@lealilaw.com

---

[6] Prior to filing the Motion, undersigned counsel spoke with a staff member of the AOUSC and was advised to provide electronic notice to the referenced email address.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2021, a true and correct copy of foregoing was (a) electronically filed with the Court using the CM/ECF system, which sent notification and was electronically served upon all parties in interest participating in the CM/ECF system in this case; and (b) was sent out via U.S. Postal Service – First Class Mail to: Administrative Office of the United States Courts, One Columbus Circle, NE, Washington, D.C. 20544, Attn: General Counsel's Office (and via email at: Court_Opinions@ao.uscourts.gov); and U.S. Government Printing Office, 732 N. Capitol Street NW, Washington, D.C. 20401.

                                          By: /s/ Frank L. Eaton
                                                   FRANK L. EATON